**Sabrina AQUINAS, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. 94 Civ. 2875 (SHS).**

United States District Court, S.D. New York.

Sept. 26, 1996.

Sabrina Aquinas, pro se.

Anthony W. Eckert, III, Biedermann, Hoenig, Massamillo & Ruff, P.C., New York City, for defendant.

## OPINION AND ORDER

STEIN, District Judge.

Sabrina Aquinas, originally represented by counsel but now proceeding pro se, brought this discrimination suit against her former employer, Federal Express Corporation ("FedEx"). Aquinas claims that she was harassed and fired by FedEx because she suffers from a physical disability. She asserts seven causes of action, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York Human Rights Law, N.Y.Exec.Law § 290 et seq. ("NYHRL"), and for breach of contract. Defendant has moved for summary judgment dismissing the complaint pursuant to Fed. R.Civ.P. 56(b). For the reasons set forth below, defendant's motion is granted and the complaint is dismissed.

## I. BACKGROUND

The facts are not in dispute. Sabrina Aquinas was hired by FedEx as a Customer Service Agent in the fall of 1986, and remained a FedEx employee until she was dismissed six and one half years later. (Amended Complaint at 1.) Approximately one year after Aquinas was hired, her superiors at FedEx became concerned about the frequency of her absences from work. In late 1987 and early 1988 she was "given verbal counselling" about her absenteeism (Def.3(g) Stmt. at ¶ 6), and in the fall of 1988 she received two written warnings stating her attendance was below the company's minimum acceptable rate. (Pl.Dep.Exh. 8.)

In 1989, she sustained an injury on the job, for which she took a four-month medical leave of absence (Def.3(g) Stmt. at ¶ 12); following her return to work she took off twelve and one-half sick days over an eight-month period. (Pl.Dep.Exh. 8.) As a result of her absences, Aquinas received a letter from her supervisor at FedEx on April 26, 1990, citing her "excessive absenteeism" and warning her to improve her attendance. (Pl. Dep.Exh. 8.) She protested on the ground that, with only a few exceptions, "the days out were due to [the] on-job injury" suffered in 1989 and therefore should not be counted against her. (Id.)

In the summer of 1990, Aquinas was again injured on the job when "one male employee picked her up and physically tossed her to another male employee." (Amended Complaint at 3; Pl.Dep.Tr. at 187–190). She subsequently was diagnosed with "post-traumatic fibrositis/fibromyalgia," the condition that underlies her claim in this litigation. (Vallarino Dep.Exh. 3; Pl.Dep.Tr. at 332–33.) She sought and received payment for this impairment pursuant to the New York workers' compensation program, and was unable to return to work during much of 1990 and most of early 1991. These absences were not counted against her attendance record. (Def.3(g) Stmt. at ¶ 28.)

Aquinas resumed her job in July of 1991, after being released by her doctor "with no medical restrictions of any kind." (Def.3(g) Stmt. at ¶ 29.) During the following year, however, she "resumed her previous pattern" of absences, for which she received a written warning in February, 1992. (Def.Mem. of Law at 5–6.) In a performance review on October 10, 1992, FedEx notified Aquinas that she was again below the company minimum, and gave her its "lowest possible rating" for attendance. (Def.3(g) Stmt. at ¶ 38.) When she protested that many of her absences were related to her shoulder injury, FedEx agreed to amend her score but stressed that all future sick days would be counted against her. (Pl.Dep.Exh. 10; Def. 3(g) Stmt. at ¶ 42.)

Under FedEx's disciplinary policy, employees may be terminated if they receive three written performance reminders within a six-month period. (Def.Notice of Motion at Exh. F.) Aquinas did receive three such notices: the first followed an unscheduled absence in December 1992 (Pl.Dep.Exh. 8—letter dated Dec. 12, 1992); the second was issued after Aquinas took a series of sick days in late January, 1993 (Pl.Dep.Exh. 8—letter dated February 3, 1993); and the third and final reminder came after she took two sick days in early April. (Pl.Dep.Exh. 9—letter dated April 13, 1993.) On April 13, 1993, FedEx Operations Manager Sally Maher fired Aquinas, citing general company policy. (Def.3(g) Stmt. at ¶ 55.)

Aquinas subsequently filed a charge with the Equal Employment Opportunity Commission alleging unlawful discrimination by FedEx on the basis of her shoulder impairment. (Amended Complaint at 1.) After the EEOC issued a Right to Sue letter on January 24, 1994, Aquinas brought this lawsuit seeking reinstatement, compensatory and punitive damages, and costs. (Amended Complaint at 12–13.) Her complaint alleges that FedEx failed reasonably to accommodate her disability in violation of both the ADA and the NYHRL; that FedEx harassed her and required her to take a postemployment medical examination in violation of both the ADA and the NYHRL; that FedEx wrongfully terminated her because of her disability in violation of both the ADA and the NYHRL; and that FedEx breached its contractual obligations to her by violating the terms of its employee handbook. (Amended Complaint at 5–11.)

FedEx has now moved for summary judgment on several grounds. It argues first that Aquinas is not entitled to sue under the ADA or the NYHRL because she is not "disabled." (Def.Mem. of Law at 10–15.) In addition, FedEx contends that Aquinas is not a "qualified individual" under the ADA, because she has not shown that she can perform the essential functions of her job, with or without a reasonable accommodation. (Def.Mem. of Law at 15–19.) Finally, with respect to the breach of contract claim, FedEx argues that its right to dismiss Aquinas at will was not limited by the policies contained in its employee handbook, and that in any event such policies were fully complied

with in this case. (Def.Mem. of Law at 19–21.)

## II. DISCUSSION

█ Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); see *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen,* 64 F.3d at 79 (citations omitted) (quoting *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

No material facts are at issue here. Even granting Aquinas the leeway to which pro se plaintiffs are entitled (see *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)), no reasonable trier of fact could find in her favor. The evidence presented in this case does not qualify plaintiff for ADA or NYHRL protections, nor does it establish that FedEx was contractually precluded by the terms of its employee handbook from terminating her under these conditions. Accordingly, defendant is entitled to summary judgment on all claims.

A. Plaintiff's Claims Under the ADA.

█ The Americans with Disabilities Act prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). In order to survive a motion for summary judgment on an ADA claim, the plaintiff must "establish a prima facie case by producing evidence sufficient to support a reasonable inference of discrimination." *Foster v. Arcata Assoc., Inc.,* 772 F.2d 1453, 1459 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). Specifically, she must show: (1) that she is disabled within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential func-

tions of her job; and (3) that she suffered the complained-of adverse employment action because of her disability. *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722 (2d Cir. 1994); *Wernick v. Federal Reserve Bank of New York,* 1995 WL 598973 (S.D.N.Y.1995).

### 1. *Plaintiff is not "disabled"*

█ Aquinas has not established that she is disabled within the meaning of the ADA. To claim that status, an individual must show that she suffers from a physical or mental impairment that "substantially limits" one or more of her "major life activities," such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i). An impairment "substantially limits" one of these activities if it restricts "the condition, manner or duration" under which an individual can perform the activity "as compared to ... the average person in the general population." 29 C.F.R. § 1630.2(j). In other words, the ADA protects only a limited class of persons—individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life. *Sweet v. Electronic Data Systems, Inc.,* No. 95 Civ. 3987, 1996 WL 204471 (S.D.N.Y.) at *4.

Aquinas suffers from fibromyalgia (also referred to in her submissions as fibromyositis) in her left shoulder, a condition for which she underwent treatment and rehabilitation in the fall of 1990 and from time to time thereafter. (Amended Complaint at 5.) Her reported symptoms from this impairment include "swell[ing]" and "spasms on my shoulder," "pain and restrictions of my neck movement to the left," and "pain down to my hand all the way down my arm." (Pl. Dep.Tr. at 332.) As described by Aquinas's doctor, fibromyalgia is a "benign" condition in the sense that it "is not going to kill or deform the patient," but it is nevertheless "very, very annoying" and can involve "prolonged suffering, prolonged treatments," and "a distinct alteration of quality of life and general function." (Vallarino Dep.Tr. at 129.)

Even taking these assertions to be true for the purpose of this motion, they do not suffice to establish that Aquinas is disabled within the terms and intendment of the ADA. She also must show that her impairment "substantially limits" one of her major life activities. To this end she has offered no evidence regarding her ability to undertake such activities as caring for herself, performing manual tasks, walking, seeing, hearing, speaking or learning. Her only contention is that "at times" during her employment with FedEx the pain in her shoulder caused her to have "trouble lifting packages" (Pl.Dep.Tr. at 302) and occasionally forced her to take days off from work for "treatment and rehabilitation." (Amended Complaint at 5.)

■ The Court assumes, as a matter of liberal construction, that by these assertions Aquinas means to argue that her impairment substantially limited her ability to work. If indeed this is her contention, it is without merit. Pursuant to the ADA, an individual's "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(ii). Rather, there must be a significant restriction on employment generally, i.e., on plaintiff's ability to perform "a class of jobs or a broad range of jobs" as compared to an average person of comparable skills and training. 29 C.F.R. § 1630.2(j)(3)(ii); *Byrne v. Bd. of Education, School of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992). In this case, Aquinas has not identified any such categories of employment; indeed, she has not even shown that her condition limited her ability to perform her own job at FedEx. The record flatly shows that she was not medically precluded from engaging in any physical tasks upon her return to work in 1990. P.Tr. at 302–303. Moreover, her poor attendance record provides little evidence of disability, since many of her absences predated—or were unrelated to—her medical condition. Accordingly, even assuming that Aquinas suffers from a physical impairment that causes her considerable pain, discomfort and alteration of her activities, she is not "disabled" within the meaning of the ADA.

### 2. *Plaintiff is not "otherwise qualified"*

■ Summary judgment would be warranted in defendant's favor here even if Aquinas were disabled under the ADA, because she has not shown that she is "otherwise qualified" for her job with FedEx. Under the terms of the ADA, "otherwise qualified" means that the disabled individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995). To determine whether a plaintiff meets this test, a court must analyze: (1) the essential functions of plaintiff's job, (2) plaintiff's ability to perform those functions without accommodation; (3) plaintiff's ability to perform those functions with accommodation, and (4) whether such accommodation would be reasonable. *Sweet* at *7.

■ One of the essential functions of Aquinas's job at FedEx was regular attendance. As a general rule, "some degree of regular, predictable attendance is fundamental to most jobs," *Misek–Falkoff v. IBM Corp.,* 854 F.Supp. 215, 227 (S.D.N.Y.1994), aff'd, 60 F.3d 811 (2d Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 522, 133 L.Ed.2d 429 (1995) and —— U.S. ——, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996), and an employee who cannot get to work does not satisfy the essential requirements of her employment. *Kotlowski v. Eastman Kodak Co.,* 922 F.Supp. 790, 796 (W.D.N.Y.1996). Moreover, in the determination of what constitutes an "essential function" of employment, the ADA provides that "consideration shall be given to the employer's judgment." 29 C.F.R. § 1630.2(n)(1); *Sweet* at *8. In this case it is clear that FedEx informed its employees repeatedly and unambiguously that daily attendance is "imperative" to the success of its operations. (Pl.Dep.Tr. at Exh. 8—letters dated October 8 and November 28, 1988.)

■ The record establishes that Aquinas was not able to perform this essential function of her job without accommodation. Her attendance problems at FedEx are well documented in performance evaluations dating back to 1988, and Aquinas has not denied that her rate of absenteeism was, at all rele-

vant times, unacceptable under existing company standards. (Pl.Tr. at 306.) The only remaining question is whether Aquinas can show that she would have been able to achieve an acceptable attendance rate with some reasonable accommodation by FedEx. "Showing that an accommodation is available that would allow the plaintiff to perform the essential functions of her job is an element of the plaintiff's case." *Borkowski v. Valley Central School Dist.*, 63 F.3d 131, 141 (2d Cir.1995) (discussing identical standards under the Rehabilitation Act). She must present "at least a facial showing," *Misek–Falkoff*, 854 F.Supp. at 228, that some "effective accommodation exists that would render her otherwise qualified." *Borkowski*, 63 F.3d at 139.

 Aquinas attempts to meet this burden by claiming that FedEx could have provided her with a more flexible work schedule or computed her attendance rate without counting injury-related sick days. (Amended Complaint at 4–5.) As a matter of law, this proposal is not a "reasonable accommodation." Although reasonableness is normally a question of fact, summary judgment may be granted in cases where, as here, the plaintiff's proposed accommodation "would eliminate the essential functions of the job." *Borkowski*, 63 F.3d at 141. Aquinas's proposal, which amounts to a request for permission to work only when her illness permits, necessarily undermines the policy of regular attendance that is essential to her job. The Court of Appeals for the District of Columbia Circuit considered a similar proposal under the Rehabilitation Act and held that "to require [a government] employer to accept an open-ended 'work when able' schedule for a time-sensitive job would stretch 'reasonable accommodation' to absurd proportions." *Carr v. Reno*, 23 F.3d 525, 531 (D.C.Cir.1994). The same reasoning applies to the private-sector defendant in this case.

 In sum, a disabled employee who cannot get to work as often as her employer requires is not "otherwise qualified" for her job under the ADA, and her employer is not required to make allowances for her absenteeism. *Kotlowski*, 922 F.Supp. at 797; *Teahan v. Metro–North Commuter Railroad Co.*, 80 F.3d 50, 53 (2d Cir.1996); *Carr v. Reno*, 23 F.3d at 530. In view of this principle, Aquinas is legally precluded from claiming the protections of the ADA, and FedEx is entitled to summary judgment on plaintiff's ADA claims.

## B. Plaintiff's Claims under New York Law

 Because plaintiff's federal claims are being dismissed, the question of whether this Court should exercise its supplemental jurisdiction over plaintiff's state claims is left to the Court's discretion. 28 U.S.C. § 1367(c)(3) (Supp. V 1993); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994). Here, judicial economy and the close relationship between the federal and state claims warrant retention of jurisdiction over all causes of action. Accordingly, the remaining question is whether summary judgment should be granted to defendant in regard to plaintiff's state claims.

### 1. *Plaintiff's claims under the NYHRL*

Aquinas's claims under the New York Human Rights Law essentially mirror her ADA claims, and they fail as a matter of law for the same fundamental reason: plaintiff is not "disabled" within the meaning of the statute. The NYHRL states in relevant part that it shall be an "unlawful discriminatory practice" for an employer, because of the disability of any individual, to "discharge from employment such individual or to discriminate against such individual . . . in terms, conditions or privileges of employment." N.Y.Exec.Law § 296(1)(a). The term "disability" is defined as "a physical, mental or medical impairment . . . which prevents the exercise of a normal bodily function" and which does not "prevent the complainant from performing in a reasonable manner the activities involved in [her] job or occupation . . ." N.Y.Exec.Law § 292(21).

 To the extent that this definition of "disability" differs from that under the ADA, it is the more restrictive of the two. It requires "prevention," i.e. complete rather than substantial impairment, of a "normal bodily function," rather than a major life activity. *Sweet* at *9. As discussed above,

Aquinas does not suffer from a substantial impairment of a major life activity; for the same reasons, her fibromyalgia does not prevent the exercise of any "normal bodily function." Her condition limits her endurance for physical labor, but it does not prevent her from working. Accordingly, FedEx is entitled to summary judgment on Aquinas's NYHRL claims.

### 2. *Plaintiff's Claim for Breach of Contract*

Aquinas also claims that defendant breached its contract with her by failing to follow the policies contained in its employee handbook. In particular, she alleges that FedEx applied its disciplinary procedures differently to her than to similar, non-disabled employees, in violation of its stated policies against discrimination. (Amended Complaint at 11; Pl.Dep.Tr. at 301, 306.) Presumably she intends to argue that this unequal treatment rendered her termination wrongful under the terms of her employment agreement with FedEx. (See Plaintiff's Response to Motion at ¶ 8.) It is not necessary to reach the merits of this contention, however, because Aquinas has failed to show that the employee handbook constitutes a binding contract.

Pursuant to New York law, an employer retains its traditional right to terminate any employment arrangement at will, unless that right is limited by statute or by contractual provision. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). Aquinas's original employment contract contains no such limiting clause; to the contrary, it provides that her employment "shall be for an indefinite period and may be terminated at any time." (Pl.Dep.Exh. 6—final page.) Nor has Aquinas presented any evidence to support her claim that the terms of her employment handbook altered her at-will relationship with FedEx. In the first place, she has pointed to no "express limitation" in the manual, see *Murphy*, at 304, 461 N.Y.S.2d 232, 448 N.E.2d 86; but even if the handbook policies that she has cited are liberally construed to be limiting provisions, they cannot contractually bind FedEx, as a matter of law, in the absence of substantial evidence that FedEx intended to limit its rights and that Aquinas actually relied on the contents of the handbook at the time she was hired. *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 464, 457 N.Y.S.2d 193, 197, 443 N.E.2d 441, 445 (1983); *Wexler v. Newsweek, Inc.*, 109 A.D.2d 714, 487 N.Y.S.2d 330; *Skelly v. Visiting Nurse Ass'n of Capital Region, Inc.*, 210 A.D.2d 683, 619 N.Y.S.2d 879 (3d Dept.1994). Because Aquinas has not met these evidentiary burdens, defendant is entitled to summary judgment on plaintiff's claim of breach of contract.

### III. CONCLUSIONS

For the foregoing reasons, defendant's motion for summary judgment is granted and the Clerk of Court is directed to dismiss the complaint with prejudice.

SO ORDERED.