Barbara SCOTT and Eunice
Thomas, Plaintiffs,

v.

FLAGHOUSE, INC., Defendant.

No. 95 Civ. 0759 (WCC).

United States District Court,
S.D. New York.

Oct. 16, 1997.

John D. Rapoport, P.C., White Plains, NY, for Plaintiffs; Laura Rossi–Ortiz, of counsel.

Law Offices Of Paul A. Scrudato, New York, NY, for Defendant; Paul A. Scrudato, of counsel.

## *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Barbara Scott and Eunice Thomas bring this action against Flaghouse, Inc. ("Flaghouse"), their former employer, alleging that they were wrongfully terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] Defendant Flaghouse moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, we grant Flaghouse's motion for summary judgment.

Because the claims of Scott and Thomas are factually independent, we will address them separately.

## I. *Summary Judgment Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(d). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the non-moving party. *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2511. At this stage, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538

---

1. The Complaint also asserts several pendent state claims. First, plaintiffs assert claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, that parallel their ADA claims. Second, plaintiffs' claim that Flaghouse negligently interfered with their ability to obtain state disability benefits. Third, Scott claims that Flaghouse's alleged failure to timely provide her with disability forms constituted intentional infliction of emotional distress.

Finally, Thomas alleges that her termination amounted to intentional infliction of emotional distress.

For the reasons set forth below, we exercise our discretion to retain supplemental jurisdiction over the NYSHRL claims and grant summary judgment in favor of Flaghouse with respect to those pendent claims. However, we decline to accept supplemental jurisdiction over the remaining state claims.

(1986). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

Summary judgment should be employed sparingly in employment discrimination cases where the employer's intent, motivation, or state of mind are at issue. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). A plaintiff "must nevertheless offer 'concrete evidence from which a reasonable juror could return a verdict in [her] favor,' *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. at 2514 . . ., and is not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister*, 859 F.2d at 1114. Moreover, "the summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive, and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri*, 759 F.2d at 998; *cf. McLee v. Chrysler Corp.*, 38 F.3d 67 (2d Cir.1994) (issuing writ of mandamus where the district judge, under the impression that the Second Circuit had precluded grants of summary judgment in employment discrimination cases, declined to consider whether summary judgment was appropriate). This is particularly true where, as here, full discovery has taken place. *Dister*, 859 F.2d at 1114.

## II. *Barbara Scott*

### A. *Background*

Barbara Scott was hired by Flaghouse in 1986. She became a customer service sales representative in 1990, the position she held until her termination on November 28, 1994.

In the fall of 1994, Margaret Banks became a supervisor in Scott's department. From the beginning, their relationship was strained. Scott maintains that Banks was rude and treated her unfairly, overly scrutinizing and criticizing her work. Scott experienced increased stress as a result of her sour relationship with Banks and requested a transfer to another department. The request was denied.

Banks, both at her deposition and in an internal memo dated October 7, 1994, detailed several instances of Scott's "insubordination." Scott met with Banks and Steve Jones, another member of Flaghouse's management, to discuss the incidents detailed in the Banks memo. At the meeting, Jones told Scott to "cooperate, otherwise we will get rid of you." (Scott Dep. at 81.)

Immediately after the October 7 meeting, Scott began to experience chest pains. Four days later she was examined by Dr. Seung O. Lee, a cardiologist who since 1986 had been monitoring Scott's irregular heartbeat. Scott indicated to Dr. Lee that she wanted to take a few days off from work, so Dr. Lee wrote a letter to Flaghouse explaining that stressful situations and excessive work could exacerbate Scott's heart condition. (*See* Letter, dated Oct. 11, 1994, attached as Exh. E to Pl. Mem.; Lee Dep. at 72.) Scott took a medical leave from October 17 to November 21.

On November 23, 1994—two days after Scott returned from her leave and the last workday before the Thanksgiving holiday—Flaghouse held meetings with its employees to discuss imminent organizational restructuring and the consequent changes in the employees' duties. Scott failed to attend the meeting and left for the holiday. When Scott reported to work the following Monday (November 28), she was discharged.

### B. *Discussion*

#### 1. *Americans with Disabilities Act*

■ The Americans with Disabilities Act prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to," *inter alia*, discharge from employment.[2] 42 U.S.C.

---

**2.** The statute defines "qualified individual with a disability" as "an individual with a disability

§ 12112(a). In order to survive an employer's motion for summary judgment, a plaintiff must establish a prima facie case of discrimination under the ADA by producing evidence sufficient to support a reasonable inference of discrimination.[3] *Johnson v. New York Medical College*, No. 95–8413, 1997 WL 580708, at *4 (Sept. 18, 1997). In order to establish a prima facie case under the ADA, a plaintiff must show that: (1) she is "disabled" within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she was discharged because of her disability. *Christopher v. Laidlaw Transit Inc.*, 899 F.Supp. 1224, 1226–27 (S.D.N.Y.1995); *see also Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383 (2d Cir.1996); *Aquinas v. Federal Express Corp.*, 940 F.Supp. 73, 77 (S.D.N.Y. 1996).

■ Here, the record does not support the conclusion that Scott was "disabled" within the meaning of the ADA. The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more of the major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(a)-(c).

With respect to the first prong of the definition, courts consider (1) whether the plaintiff's condition is a physical or mental impairment; (2) whether that impairment affects a major life activity; and (3) whether the major life activity is substantially limited by the impairment. *Cerrato v. Durham*, 941 F.Supp. 388, 391–92 (S.D.N.Y.1996).

According to regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), a "physical or mental impairment" is a physiological disorder or condition that affects one or more body systems.

29 C.F.R. § 1630.2(h)(1) (1996). The term "major life activities" includes, but is not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). An individual is "substantially limited" by an impairment if she is "[s]ignificantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." *Id.* § 1630.2(j)(1)(ii); *see also Aquinas*, 940 F.Supp. at 77 ("the ADA protects only a limited class of persons—individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life"). In determining whether an individual is substantially limited by an impairment, the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact of or resulting from the impairment. *Id.* § 1630.2(j)(2).

Although Scott was born with a condition called "mitral valve prolapse" that causes an irregular heartbeat, she cannot establish that she is actually "disabled" within the meaning of the ADA. Scott has offered no evidence that her heart condition substantially affected a major life activity; if anything, the record suggests that it did not. In his deposition, Dr. Lee stated that Scott's condition was "benign" and that she was "fairly asymptomatic." (Lee Dep. at 31, 45.) He repeatedly testified that Scott's heart condition did not limit her daily or work-related activities in any way. (*See, e.g., id.* at 52–55.) He concluded that the chest pains Scott reported after the October 7 meeting with Banks and Jones were unrelated to her heart condition;

---

who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

**3.** If the plaintiff is able to establish a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff. If the employer is able to do so, the burden shifts back

to the plaintiff to show that the employer's proffered reason is pretextual and that unlawful discrimination was the actual reason for the termination. *Kolivas v. Credit Agricole*, No. 95–5662, 1996 WL 684167, at *3 (S.D.N.Y. Nov.26, 1996) (citing *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994) (Rehabilitation Act)), *aff'd*, 125 F.3d 844, 1997 WL 606742 (2d Cir. 1997).

rather, he determined that emotional stress caused the chest pains and that they were "not[hing] to worry about." (Lee Dep. at 53.) Scott herself testified that "[w]hen I wasn't at work, I was fine." (Scott Dep. at 118.). Accordingly, we find that Scott is unable to demonstrate that her heart condition in fact substantially affected a major life activity or that she has a "record" of such an impairment.

■ Alternatively, Scott contends that she was disabled within the meaning of the ADA because Flaghouse "regarded" her as disabled. This "regarded as" part of the ADA's definition of "disability" was designed to protect individuals from the "myths, fears and stereotypes" associated with disabilities. 29 C.F.R. Pt. 1630, App. § 1630.2(1) at 342 (citing *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) (Rehabilitation Act)). To succeed on the basis of a "perceived disability" theory, Scott must show (1) that Flaghouse management knew about her heart condition, and, if so, (2) that it viewed this condition as substantially limiting a major life activity, such as working. *See Greenberg v. New York State,* 919 F.Supp. 637, 641–42 (E.D.N.Y.1996); *see also* 29 C.F.R. § 1630.2(1); *id.* Pt. 1630, App. § 1630.2(1) at 341–42. Moreover, insofar as Scott claims that Flaghouse perceived her condition as substantially limiting her ability to work, it is well-established that she must show that Flaghouse considered her heart condition to foreclose not only her particular position, but employment in general. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j) at 340; *Sherman v. New York Life Ins. Co.,* No. 96–9665, 1997 WL 452024, at *3–4 (S.D.N.Y. Aug.7, 1997) (citing *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994) (Rehabilitation Act)); *Greenberg,* 919 F.Supp. at 642.

Here, even assuming that Scott can show that her supervisors at Flaghouse were aware that she had a heart condition, she has provided no evidence that those persons considered her substantially unable to work or perform any other life function. Accordingly, we find that Scott was not "disabled" within the meaning of the ADA at the time of her discharge. We therefore grant Flag-

house's motion for summary judgment with respect to Scott's ADA claim.

### 2. *New York State Human Rights Law*

■ Scott brings a pendent state claim of disability discrimination under the New York State Human Rights Law ("NYSHRL"). Although we have dismissed Scott's federal claim, we exercise our discretion under 28 U.S.C. § 1367(c) to retain supplemental jurisdiction over her NYSHRL claim based on judicial economy and the close relationship between her federal and state claims. *See Aquinas,* 940 F.Supp. at 79; *Sweet v. Electronic Data Sys., Inc.,* No. 95–3987, 1996 WL 204471, at *3 (S.D.N.Y. Apr. 26, 1996).

The NYSHRL provides, *inter alia,* that it shall be an unlawful discriminatory practice for an employer to discharge or otherwise discriminate against any employee because of her disability. N.Y. Exec. Law § 296(1)(a) (McKinney Supp.1997). The term "disability" is defined in part as a physical impairment "which prevents the exercise of a normal bodily function" and which does not "prevent the complainant from performing in a reasonable manner the activities involved in [her] job or occupation." N.Y. Exec. Law § 292(21).

■ The NYSHRL and ADA are interpreted and analyzed in a virtually identical manner. *Mohamed v. Marriott Int'l, Inc.,* 905 F.Supp. 141, 156 (S.D.N.Y.1995). If anything, to the extent that the NYSHRL's definition of "disability" differs from that of the ADA, the former is the more restrictive of the two in that it requires complete rather than substantial impairment. *Aquinas,* 940 F.Supp. at 79.

Therefore, because our ADA analysis dictates our determination of the pendent NYSHRL claim, we grant Flaghouse's motion for summary judgment with respect to the latter claim as well.

### 3. *Negligence and Intentional Infliction of Emotional Distress*

Scott also brings pendent state claims for negligence and intentional infliction of emotional distress. She asserts that Flaghouse negligently interfered with her ability to ob-

tain state disability benefits and that this failure constituted intentional infliction of emotional distress. Although we have significant doubts as to the merits of these claims, we decline to assert supplemental jurisdiction over them.

### III. *Eunice Thomas*

#### A. *Background*

Eunice Thomas was hired by Flaghouse in 1987 as a full-time employee. In 1991, she changed her status to part-time so that she could attend college classes. Thomas was discharged on January 10, 1995 because, Flaghouse states, her part-time position as a customer service sales representative was eliminated in favor of a full-time position.

In 1992, Thomas was diagnosed with varicose veins in her left leg. The condition caused her pain, especially when she was standing. Thomas's doctor advised her to wear corrective stockings and to keep her leg elevated when possible. In September 1994, Thomas disclosed her condition to Lynn Nixon, Flaghouse's Director of Human Resources, and told her that surgery might be necessary. By October, her condition has worsened and she was in constant pain and developed a limp. She informed one of her supervisors, Margaret Banks, that climbing the stairs to the other departments was painful.

On October 7, 1994, Thomas advised her supervisors, Banks and Steve Jones, that she would be having surgery for her varicose veins as soon as she received her insurance company's approval. She informed them that she would only be out of work for a day or two.

Thomas stopped working on November 28, 1994 because of increased pain. Flaghouse received a letter, dated that same day, from her doctor informing Flaghouse that Thomas was "suffer[ing] from painful progressive varicose veins," that she was "unable to perform her usual work duties" at that time, that she had an appointment with him on December 6, and that she would undergo surgery pending the insurance company's approval. (Letter from Dr. Heshmat Majlessi to Steve Jones, dated Nov. 28, 1994, attached

as Exh. M to Pl. Mem.) Following Thomas's December 6 appointment, her doctor wrote a second letter advising Flaghouse that Thomas was "unable to return to work due to pain." (Letter from Dr. Heshmat Majlessi to Steve Jones, dated Dec. 7, 1994, attached as Exh. M to Pl. Mem.)

After receiving insurance company approval, Thomas scheduled surgical procedures for January 13 and 17, 1995. At that time, she informed Lynn Nixon of her surgery schedule and told Nixon that she "would be back to work a day or two after the second surgery." (Thomas Aff. ¶ 14.)

On January 10, 1995—three days before the first surgical procedure—Thomas went to the Flaghouse office to pick up a pay check. At that time, Steve Jones informed her that her position had been eliminated and that she was being discharged.

#### B. *Discussion*

##### 1. *Americans with Disabilities Act*

■ Thomas does not assert that she was actually disabled by her varicose veins. Rather, she contends that she is "disabled" within the meaning of the ADA because Flaghouse "regarded" her condition as substantially limiting a major, life activity (presumably walking or working). This argument is without merit.

As explained above, a plaintiff asserting a "perceived disability" theory under the ADA must show that her employer not only knew about her impairment, but also regarded the impairment as substantially limiting a major life activity. *Greenberg v. New York State,* 919 F.Supp. 637, 641–42 (E.D.N.Y.1996); *see also* 29 C.F.R. § 1630.2(1). Although the EEOC guidelines make clear that "temporary, non-chronic impairments of short duration, with little or no long term impact" are not substantially limiting and thus seldom constitute "disabilities," 29 C.F.R. Pt. 1630, App. § 1630.2(h) at 339, an impairment that is not in fact substantially limiting may nevertheless render a person "disabled" under the ADA if her employer regards her as substantially limited. *See id.* Pt. 1630, App. § 1630.2(1) at 341.

Here, it is undisputed that Flaghouse management was aware of Thomas's varicose vein condition. However, Thomas has offered no evidence that Flaghouse perceived her condition as substantially limiting a major life activity. Thomas herself states that she told Flaghouse that she would be back at work only one or two days after her surgery. (Thomas Aff. ¶¶ 8, 14.) Therefore, although Flaghouse knew (based on Thomas's absence from work and her doctor's notes) that Thomas was substantially limited in her ability to work, Thomas gave Flaghouse every indication that this limitation was only temporary and that she could resume working shortly after the surgery.

Accordingly, we find that Thomas was not "disabled" within the meaning of the ADA and grant Flaghouse's motion for summary judgment on Thomas's ADA claim.

### 2. *New York State Human Rights Law*

As explained in section II.B.2 of this Opinion, the NYSHRL and ADA are interpreted and analyzed in a virtually identical manner. *Mohamed v. Marriott Int'l, Inc.*, 905 F.Supp. 141, 156 (S.D.N.Y.1995). Having granted summary judgment with respect to the ADA claim, and exercising our discretion to retain supplemental jurisdiction over this state claim pursuant to 28 U.S.C. § 1367(c), we accordingly grant summary judgment with respect to the NYSHRL claim.

### 3. *Negligence and Intentional Infliction of Emotional Distress*

Thomas also asserts pendent state claims for negligence and intentional infliction of emotional distress. She asserts that Flaghouse negligently interfered with her ability to obtain state disability benefits and that its conduct in terminating her three days before her surgery constituted intentional infliction of emotional distress. Although we have significant doubts as to the merits of these claims, we decline to assert supplemental jurisdiction over them.

### IV. *Conclusion*

For the foregoing reasons, we grant defendant Flaghouse's motion for summary judgment with respect to plaintiffs' ADA and pendent NYSHRL claims. We decline to exercise supplemental jurisdiction over the remaining state claims. An appropriate judgment shall be issued by the Clerk of the Court.

SO ORDERED.