**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-10026

DAVID SEAMAN,

Plaintiff-Appellant-Cross-Appellee,

versus

C S P H, INC., doing business as Domino's Pizza;
PERRY ZIELINSKI,

Defendants-Appellees-Cross-Appellants.

Appeals from the United States District Court
For the Northern District of Texas

June 22, 1999

Before KING, Chief Judge, POLITZ and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:

David Seaman appeals an adverse summary judgment in favor of CSPH, Inc.
on his American with Disabilities Act, Title VII, and Family and Medical Leave
Act claims. For the reasons assigned, we affirm.

**BACKGROUND**

Seaman was employed by CSPH, which owns and operates 32 Domino's
Pizza stores in the Dallas-Fort Worth area. He began as a driver, entered the
management training program and rose in the company ranks, first becoming an
assistant manager and then a store manager in November 1995. As manager, he
was responsible for overseeing daily operations, hiring delivery drivers and inside

personnel, grooming members of his staff for management positions, and filling in when staffing shortages occurred. As manager, he was required to be on call and to carry a pager at all times.

When Seaman took over the Prestonwood store there had been problems under the previous manager and the store was understaffed. The problems worsened following Seaman's transfer as several employees left. He often was required to work long hours. Prior to and during this time, he experienced a number of traumatic deaths in his family, and his mother, estranged wife, and girlfriend suggested that he might be suffering from bipolar disorder, a condition earlier suffered by his father.

Seaman alleged that in January 1996 he told Danny Dain, his Area Supervisor, of his belief that he suffered from bipolar disorder, and that he might need time off to see a doctor. He also alleged that he suffered from sleep apnea during this period and that because of the staffing problems he was working all shifts on several consecutive days. He alleged that as a result of both the long hours and his sleeping condition, he collapsed in the store in February 1996. He did not seek medical attention during January or February.

The situation worsened. On March 7 Seaman left an inexperienced employee in charge of closing the store and turned off his pager so he could not be reached. On March 9 and 10 he did not report for work and did not call in, requiring Dain to cover for him. He visited the store the evening of the 10th and spoke with Dain. He took off March 11 and 12 ostensibly to see a doctor and did not go to work on

the 13th.  Perry Zielinski, CSPH's Director of Operations, spoke with Seaman and suspended him for his absence.

Seaman did not return to work until March 17 at which time he told Dain that he wanted to return to an assistant manager's position.  Dain granted this request. A few days later he told Dain and Zielinski that he wished to take two weeks of vacation to take care of his father's estate in California.  He gave them a letter from his doctor stating that he was "emotionally and physically exhausted" and demonstrated "clinical criteria for a Major Depressive Reaction."  In response to this letter Zielinski and Dain relieved Seaman of wearing a pager and sought to schedule him off two days a week.  After Seaman returned to work as an assistant manager, Zielinski had to counsel him for disruptive comments on the job.

In early April Seaman sought two weeks of vacation and a third week of unpaid leave commencing April 27.  On April 10 he filed a charge of discrimination with the EEOC.  In an April 12 telephone conversation with Mark Frisbie, Seaman's then area supervisor, he was told that he should choose other vacation dates because the requested dates had been given to other employees. Seaman became upset, the conversation became heated, Seaman repeatedly yelled at Frisbie and Frisbie fired him.

Seaman sued CSPH seeking relief under the ADA,[1] FMLA,[2] Title VII,[3] and

[1] 42 U.S.C. § 12101 *et seq.*

[2] 29 U.S.C. § 2612 *et seq.*

[3] 42 U.S.C. §2000e *et seq.*

state tort law. In due course the trial court granted CSPH summary judgment, holding that although there was a factual issue whether Seaman was a qualified individual with a disability, CSPH had acquitted its duty of accommodating disability-engendered limitations. The court also held that Seaman had not made CSPH aware of facts warranting an FMLA qualifying leave and had not shown that the conduct of CSPH employees amounted to the outrageous conduct required for intentional infliction of emotional distress. Seaman timely appealed.

## ANALYSIS

Summary judgment is appropriate when the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[4] In determining whether summary judgment was appropriate, we conduct a *de novo* review, judging the facts in the light most favorable to the non-movant.[5] Without weighing the evidence, assessing its probative value, or resolving factual disputes, we search the record for resolution determinative facts and, if no material disputes are found, we apply the controlling law to the controversy.[6]

On appeal, Seaman raises various challenges to the district court's dismissal of his ADA, FMLA and state law claims. He contends that he presented sufficient evidence that CSPH intentionally discriminated against him because of his

---

[4]Fed. R Civ.P. 56(c); **City of Arlington v. FDIC**, 963 F.2d 79 (5th Cir. 1992).

[5]**Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.**, 55 F.3d 181 (5th Cir. 1995).

[6]**City of Arlington**.

4

disability, failed to accommodate his disability-engendered limitations in both his manager and assistant manager positions, and terminated his employment in retaliation for his EEOC complaint. He further maintains that the district court erred in finding that CSPH did not violate the provisions of the FMLA in failing to grant him disability leave. Finally, he contends that he presented sufficient evidence that CSPH's employees intentionally inflicted emotional distress.

*ADA Claims*

The American with Disabilities Act is an antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities.[7] The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[8]

One may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in **McDonnell Douglas Corp. v. Green**.[9] To establish a *prima facie* case of intentional discrimination under **McDonnell Douglas**, a plaintiff must show that he or she (1)

---

[7]**Taylor v. Principal Financial Group, Inc.**, 93 F.3d 155 (5th Cir. 1996).

[8]42 U.S.C. § 12112(a).

[9]411 U.S. 792 (1973). *See* **Daigle v. Liberty Life Ins. Co.**, 70 F.3d 394 (5th Cir. 1995).

suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees.[10] The employer then must show a legitimate, non-discriminatory reason for its action.[11] The employee ultimately bears the burden of showing that the employer's actions were motivated by considerations prohibited by the statute.[12]

The ADA requires the employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship."[13] Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself,[14] an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations resulting therefrom.[15]

Seaman contends that CSPH failed to accommodate his disability-engendered limitations by not providing sufficient co-employees so that he could

---

[10]**Daigle.**

[11]**Id.**

[12]**Hypes v. First Commerce Corp.**, 134 F.3d 721 (5th Cir. 1998); **Daigle**.

[13]42 U.S.C. § 12112(b)(5)(A).

[14]29 C.F.R. 1630.9, App. (1995); **Taylor v. Principal Financial Group, Inc.**, 93 F.3d 155 (5th Cir. 1996).

[15]**Burch v. Coca-Cola**; 119 F.3d 305 (5th Cir. 1997);**Taylor**.

6

take time off to seek medical care. Seaman challenges the district court's finding that although he had presented sufficient evidence to support the conclusion that he was a "qualified individual with a disability" within the meaning of the ADA, he failed to show that CSPH knew of his disability and his resulting limitations. Our review of the record persuades that the district court did not err in finding that Seaman failed to present sufficient evidence that he notified CSPH of his disability or any limitations resulting therefrom before his breakdown in March 1996 or after his subsequent return to work.

Assuming *arguendo* that CSPH knew of Seaman's disability engendered limitations, the record reflects that CSPH made sufficient efforts to accommodate Seaman's requests. Dain cooperated with Seaman and sought to grant his requests. Dain did not discipline Seaman for his unexcused absences and allowed him time off to seek medical attention once Seaman requested time off. When Seaman asked for a return to an assistant manager position, Dain and Zielinski acquiesced, allowing him two days off per week and relieving him of the obligation of wearing a pager. We have found that in cases involving mental difficulties like Seaman's, in which the resulting limitations are not obvious to the employer, an employee cannot remain silent and expect his employer to bear the burden of identifying the need for and suggesting appropriate accommodation.[16] Because Seaman has

---

[16]**Taylor** (holding that plaintiff suffering from bipolar and anxiety disorder failed to adduce summary judgment evidence of failure to accommodate reasonably disability engendered limitations, as plaintiff's alleged disability was of a discreet nature and the accommodation he sought was unspecified).

7

produced no evidence that he requested any specific accommodation and that such a request was denied, his claim must fail.[17]

*Retaliation Claim*

To show an unlawful retaliation, a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action.[18] Once the plaintiff has established a *prima facie* case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action.[19] If such a reason is advanced, the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that "but for" the protected activity, the adverse employment action would not have occurred.

Seaman contends that CSPH terminated his employment as assistant manager because of the discrimination complaint he filed with the EEOC. He maintains that he informed Frisbie of this complaint during the telephone conversation which resulted in his termination, and that Frisbie's firing of him moments later is sufficient to establish the requisite causal connection between the protected activity and his termination. He insists that Frisbie's stated reason for the termination, insubordination, is pretextual.

---

[17]**Id.**

[18]**Grizzle v. The Travelers Health Network**, 14 F.3d 261 (5th Cir. 1994).

[19]**Sherrod v. American Airlines, Inc.**, 132 F.3d 1112 (5th Cir. 1998), **Grizzle**.

CSPH contends, and the district court found, that the evidence shows that Seaman was terminated for insubordination during his telephone conversation with Frisbie, and that Seaman did not present sufficient evidence that this non-discriminatory reason was a pretext for discrimination. We agree. Both Frisbie and Dorothy Roach testified that Seaman screamed at Frisbie during their last conversation on the phone; Seaman admits that he raised his voice. Roach testified that Seaman's voice was so loud that she closed the door to the office so that the customers would not hear. Frisbie testified that Seaman continued yelling at him after he told him to stop screaming. The evidence establishes that Frisbie fired Seaman for his insubordination on the phone. That Seaman mentioned his EEOC complaint to Frisbie moments before the termination does not, absent other evidence, constitute sufficient proof that the termination was retaliatory. Seaman may not use the ADA as an aegis and thus avoid accountability for his own actions.[20] His claim of retaliation is further diminished by his own admission that CSPH could have fired him on several previous occasions, but elected to give him opportunities to improve his performance. The retaliation claim lacks merit.

*FMLA Claim and Emotional Distress Claim*

The Family and Medical Leave Act provides that an employee is entitled to up to twelve weeks of unpaid leave for a serious health condition that renders the

---

[20]**Hamilton v. Southwestern Bell Tel. Co.**, 136 F.3d 1047, 1052 (5th Cir. 1998) (holding that the ADA does not insulate emotional or violent outbursts blamed on an impairment, because the rights afforded under the ADA "are a shield against employer retaliation, not a sword with which one may threaten or curse supervisors.").

employee unable to perform the functions of his or her position.[21] A serious health condition is defined in relevant part as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."[22] The FMLA provides that an employee shall make a reasonable effort to schedule treatment so as not to disrupt the employer's operations and shall give the employer at least 30 days' notice, if possible, but in any event, shall provide such notice as is practicable.[23]  In requesting the leave, an employee need not invoke the specific language of the statute, but must apprize the employer of the request for time off for a serious health condition.[24]

Seaman contends that he requested time off to seek treatment for his suspected bipolar condition, first in conversations with Dain during January/February 1996, and then during his last conversation with Frisbie on April 12, 1996.  He contends that CSPH never complied with these requests, and that its failure to do so amounted to a violation of the FMLA.

The record is devoid of proof of a request by Seaman for a leave within the meaning of the FMLA.  He informed Dain in January or February 1996 that he might be suffering from bipolar disorder and needed time off to see a doctor.  He never scheduled a doctor's appointment, however, nor did he request leave for a

---

[21]29 U.S.C. § 2612(a)(1)(D).

[22]29 U.S.C. § 2611(11).

[23]29 U.S.C. § 2612(e)(2).

[24]**Manuel v. Westlake Polymers Corp.**, 66 F.3d 758 (5th Cir. 1995).

10

certain day or period as a follow up to this conversation. He never informed Zielinski of a serious medical condition. Even if, as Seaman contends, he scheduled himself off duty to receive medical treatment but was nevertheless called in to work, the record reflects that he never informed CSPH that he was off duty to seek medical attention. His reference to his mental condition does not constitute the requisite notice of an intent to invoke FMLA leave.[25] As to his April 12, 1996 request, Seaman conceded that he did not inform Frisbie that he needed time off for a serious medical condition. His only stated reason for the requested vacation time was the desire to settle his father's estate in California. This does not qualify as a basis for FMLA leave. Seaman did not sufficiently inform CSPH of an FMLA-qualifying reason for leave and his claim must fail.[26]

Finally, we conclude that Seaman has failed to establish that CSPH's employees intentionally inflicted emotional distress. Seaman has not met the burden of showing that the conduct of CSPH's employees was so outrageous, went "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community."[27] We therefore uphold the district court's dismissal of Seaman's claims.

The judgment appealed is AFFIRMED.

---

[25]*See, e.g.*, **Satterfield v. Wal-Mart Stores, Inc.**, 135 F.3d 973 (5th Cir. 1998) (holding that plaintiff who provided only meager information of her condition to her employer and who failed to inform employer of scheduled doctor's appointment did not give adequate notice under the FMLA).

[26]29 C.F.R. § 825.208(a)(2).

[27]**Twyman v. Twyman**, 855 S.W.2d 619, 621 (Tex. 1993).