**Teresa COLE, Plaintiff,**

v.

**UNI–MARTS, INC., Defendant.**

**No. 98–CV–148A.**

United States District Court,
W.D. New York.

Feb. 16, 2000.

Harvey P. Sanders, Sanders & Sanders, Amherst, NY, for Plaintiff.

Linda H. Joseph, Buchanan Ingersoll, P.C., Buffalo, NY, Ginger D. Schroder, Buchanan Ingersoll P.C., Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1), on May 12, 1998. On September 1, 1999, defendant filed a mo-tion for summary judgment. On Decem-ber 17, 1999, Magistrate Judge Heckman filed a Report and Recommendation, rec-ommending that defendant's motion be granted in part and denied in part.

Plaintiff filed objections to the Report and Recommendation on December 30, 1999. Oral argument on the objections was held on February 9, 2000.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Rec-ommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing ar-gument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's summary judgment motion is granted to the extent that it seeks dismissal of plaintiff's claim under the ADA, and is denied in all other respects.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the under-signed by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report on dispositive motions. Defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Pro-cedure. For the following reasons, the motion should be granted in part and de-nied in part.

### BACKGROUND

On March 4, 1998, plaintiff commenced this action seeking damages and declarato-ry relief under the Americans with Disabil-ities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the New York Human Rights Law ("NYHRL"), N.Y.Exec.Law § 290 *et seq.* Plaintiff alleges that she was terminated from her position as manager of a Uni–Marts convenience store because of her disability (severe sinusitis), and was denied medical leave for hospitalization and surgery.

According to the complaint, plaintiff worked at Uni–Marts for four years prior to her termination. She began suffering from sinusitis in 1995, and at some point in 1995 she was hospitalized for a week because of her severe symptoms. In January 1997, her supervisor criticized her job performance and informed her that she would receive no pay increase pending a 90–day reevaluation. Nonetheless, she received pay increases in February and March 1997. In April 1997, she informed her supervisor that her doctor had recommended surgery to alleviate her sinusitis condition. In May 1997, she again suffered an episode of severe symptoms, and was out of work for a week. She returned to work on May 20, 1997. At that time, she informed her supervisor that her surgery had been scheduled for June 10, 1997, and that she would need to take medical leave. On May 22, 1997, she was discharged from employment. Her supervisor told her that she was being discharged because the store ran out of Newport® cigarettes.

On November 21, 1997, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"), alleging discriminatory discharge in violation of the ADA (Item 1, Ex. A). On December 4, 1997, the EEOC issued a "Dismissal and Notice of Rights" letter advising plaintiff that her charge had been dismissed for the reason that she "is not a qualified individual with a disability," and that she had 90 days from receipt of the letter to file this action in federal court (*id.*, Ex. B). The action was filed on March 4, 1998.

On September 1, 1999, after discovery, defendant moved for summary judgment dismissing the case on the following grounds:

1. Plaintiff cannot establish a valid claim for disability discrimination under either the ADA or the NYHRL.

2. Plaintiff failed to give her employer 30–day advance notice of her need for medical leave, as required under the FMLA.

3. Plaintiff has not suffered any actual damages.

Each of these grounds is discussed in turn below.

### DISCUSSION

### 1. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Second Circuit has repeatedly noted that, "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *see also Tomka v. Seiler,* 66 F.3d 1295, 1304 (2d Cir.1995); *Nweke v. Prudential Ins. Co. of America,* 25 F.Supp.2d 203, 213 (S.D.N.Y.1998). A fact is "material" only if the fact has some affect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, supra; see also Bryant v. Maf-*

*fucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The Second Circuit has also noted that additional considerations must be taken into account when deciding whether summary judgment should be granted in an employment discrimination action. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994). As explained in *Gallo,* because direct evidence supporting a claim of intentional discrimination is rarely found among an employer's documents, the affidavits, depositions and other items submitted to the court "must be carefully scrutinized for circumstantial evidence which, if believed, would show discrimination." *Gallo, supra,* 22 F.3d at 1224.

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.

*Id.* Although caution must be exercised in granting summary judgment where motive is genuinely in issue, summary judgment remains available for the dismissal of employment discrimination claims in cases lacking genuine issues of material fact. *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997); *see also Gallo, supra; Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 19 (2d Cir.1995); *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994).

**2. Discriminatory Discharge.**

**A. ADA.**

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to" discharge from employment. 42 U.S.C. § 12112(a); *see Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999); *Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc.,* 198 F.3d 68, 71 (2d Cir.1999). In analyzing a discriminatory discharge claim under the ADA, courts apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Heyman, supra; see also Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998). Under this analysis, the plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to the defendant, who must offer through the introduction of admissible evidence a non-discriminatory reason for its actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. The plaintiff then must show that the proffered reason was merely a pretext for discrimination, which "may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Defendant's summary judgment motion addresses only the first step of the *McDonnell Douglas* analysis. In order to establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) her employer is subject to the ADA, (2) she is "disabled" within the meaning of the ADA, (3) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation, and (4) she was discharged because of her disability. *Heyman, supra,* 198 F.3d at 72; *see also Wernick v. Federal Reserve Bank,* 91 F.3d 379,

383 (2d Cir.1996); *Christopher v. Laidlaw Transit Inc.*, 899 F.Supp. 1224, 1226–27 (S.D.N.Y.1995).

Defendant's motion focuses primarily on the second element.[1] Specifically, defendant argues that plaintiff cannot establish a prima facie case because the evidence produced during discovery, including plaintiff's deposition testimony and medical records, demonstrates that plaintiff did not suffer from a "disability" within the meaning of the ADA. Plaintiff responds that her sinusitis manifested itself by a swelling of the throat which caused difficulty breathing, and severe headaches which caused difficulty thinking or focusing her eyes. According to plaintiff, these symptoms raise a genuine issue of fact as to whether her sinusitis constitutes a "disability."

The ADA defines "disability" as follows:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 150 (2d Cir.1998); *Cerrato v. Durham*, 941 F.Supp. 388, 391 (S.D.N.Y.1996). In this case, plaintiff claims that she is disabled because she has a physical impairment that substantially limits one or more major life activities, as defined by § 12102(2)(A).

The EEOC regulations define a "physical impairment" under the statute as follows:

Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1). The regulations define the term "substantially limits" to mean:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).[2] Finally, the regulations define the term "major life activi-

---

**1.** Defendant also moved for summary judgment on the ground that plaintiff did not seek any "reasonable accommodation" from her employer, as required by the ADA. Plaintiff responded that this case does not involve a reasonable accommodation claim, and the matter was not pursued at oral argument.

**2.** The regulations also provide the following guidance with respect to assessing whether an impairment substantially limits the major life activity of "working":

(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is

ties" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff contends that her sinusitis substantially limited her ability to perform the major life activities of "breathing, seeing, and/or thinking" (Item 26, p. 1). As stated by the Second Circuit:

> Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities.

*Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir.1998) (citing *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1454 (7th Cir.1995)). "[T]he impairment must be significant, and not merely trivial." *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 898 (10th Cir.1997), *aff'd*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see also Reeves v. Johnson Controls, supra*, 140 F.3d at 152 ("[T]he ADA does not guard against discrimination based upon any physical or mental impairment but only those impairments that are significant.").

In making this assessment, the following factors should be considered by the court: the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *see Ryan v. Grae & Rybicki, supra; Scott v. Flaghouse, Inc.*, 980 F.Supp. 731, 734 (S.D.N.Y.1997), *aff'd in part, vacated in part*, 159 F.3d 1348 (2d Cir.1998) (table; text in Westlaw at 1998 WL 536764); *Kirkendall v. United Parcel Service, Inc.*,

964 F.Supp. 106, 109–10 (W.D.N.Y.1997). If, after considering these factors, the court concludes that the plaintiff has failed to raise a triable issue as to whether a major life activity was substantially limited by his or her impairment, summary judgment in favor of the defendant is appropriate. *Ryan v. Grae & Rybicki, supra*, 135 F.3d at 870–71.

The first factor—the nature and severity of the impairment—weighs against a finding of substantial limitation in this case. According to plaintiff's medical records, on May 25, 1997, Dr. Gerald D. Stinziano described plaintiff's condition as "mild chronic left ethmoid and maxillary sinusitis" (Item 20, Ex. A, p. 5). Plaintiff testified at her deposition that her sinusitis did not "really ha[ve] a major effect" on her life (Item 20, Ex. E, p. 30). She was able to perform the functions of her job throughout the time of her employment at Uni–Marts (*id.*, pp. 25, 30), with the exception of five days in February 1994 and "a day here or there" (*id.*, p. 25). She was able to take care of her children (*id.*, pp. 30–31). She could not identify any activities which she was unable to do because of her sinusitis condition (*id.*, p. 31).

The second and third factors—the duration and long-term impact of the impairment—likewise weigh against a finding of substantial limitation. For example, plaintiff testified that the breathing problems and headaches caused by her condition were "episodic," occurring "[t]wice a year" (Item 20, Ex. E, pp. 16–17; 24–25). On May 25, 1997, Dr. Stinziano "suggested an endoscopic drainage procedure" (Item 20, Ex. A, p. 5). Plaintiff underwent the procedure on June 10, 1997 (*id.*, p. 1). On June 28, 1997, plaintiff was "doing quite well and healing nicely" (*id.*, p. 6). On July 8, 1997, she was "doing well" and "her sinuses [were] healing appropriately" (*id.*, p. 7). In fact, plaintiff testified at her deposition that the surgery had alleviated

also disqualified because of the impairment (broad range of jobs in various classes).

These guidelines are not particularly helpful in this case because, as discussed in the text, plaintiff does not allege that her sinusitis sig-

nificantly limited her ability to work, but instead alleges that her sinusitis significantly limited her ability to perform the major life activities of "breathing, seeing and/or thinking."

her sinusitis, and her health had improved (Item 20, Ex. E., p. 64).

Plaintiff's medical records contain no indication that she was, at any time, "[s]ignificantly restricted as to the condition, manner or duration" under which she could breathe, see and/or think, "as compared to the condition, manner, or duration under which the average person in the general population can perform [those] same major life activit[ies]." 29 C.F.R. § 1630.2(j)(1)(ii). Instead, the evidence demonstrates that plaintiff suffered from a relatively mild case of sinusitis of limited duration, which was alleviated by surgery and which therefore cannot be expected to have any substantial permanent or long-term impact.

Plaintiff cites *Homeyer v. Stanley Tulchin Assocs., Inc.,* 91 F.3d 959 (7th Cir. 1996), and *Valentine v. American Home Shield Corp.,* 939 F.Supp. 1376 (N.D.Iowa 1996) , in support of her claim that sinusitis may be considered a "covered disability" under the ADA. However, as noted in the *Homeyer* case itself, the determination of disability must be made on an individualized, case-by-case basis rather than by reference to "abstract lists or categories of impairments, as there are varying degrees of impairments as well as varied individuals who suffer from the impairments." *Homeyer, supra,* 91 F.3d at 962; *see also Sutton v. United Air Lines, Inc., supra,* 527 U.S. at ——, 119 S.Ct. at 2147, 144 L.Ed.2d at 463. In any event, the holding in *Homeyer* is easily distinguishable on its facts because the plaintiff in that case experienced recurrent respiratory problems caused by chronic severe allergic rhinitis and sinusitis aggravated by environmental tobacco smoke. *See Homeyer, supra,* 91 F.3d at 960. Similarly, the *Valentine* case involved asthma complicated by chronic sinusitis and other impairments. *See Valentine, supra,* 939 F.Supp. at 1379 n. 1. In this case, the medical evidence and deposition testimony shows that plaintiff's sinusitis caused only intermittent or "episodic" problems which did not significantly restrict her breathing or her vision,[3] and which were substantially (if not entirely) alleviated by surgery in June 1997.

Based on my review of this evidence, I find that no reasonable jury could find in favor of plaintiff on her claim that her sinusitis substantially limited a major life activity so as to qualify as a covered disability under the ADA. Accordingly, defendant is entitled to summary judgment dismissing plaintiff's ADA claim for discriminatory discharge.

### B. NYHRL.

Plaintiff argues that even if her ADA claim fails, she should be allowed to proceed on her NYHRL claim. Like the ADA, the NYHRL prohibits discriminatory discharge based on an employee's disability. N.Y.Exec.Law § 296(1)(a). However, the NYHRL defines the term "disability" as follows:

(a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y.Exec.Law § 292(21).

Several district courts have focused on the "prevention" clause of the statute

---

**3.** Plaintiff has made no showing to suggest that her sinusitis significantly restricted her "thinking," or that the court should consider "thinking" to be a major life activity within the meaning of the ADA. *See, e.g., Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 152–53 (2d Cir.1998) (courts should not permit ADA plaintiff to individually tailor the scope of the term "major life activity").

("prevents the exercise of a normal bodily function") in holding that the NYHRL's definition of the term "disability" is more restrictive than the ADA's definition. *See, e.g., Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 210 (E.D.N.Y.1997) (N.Y.HRL requires prevention—*i.e.,* complete, rather than substantial impairment, of a normal bodily function, rather than a major life activity); *Aquinas v. Federal Express Corp.,* 940 F.Supp. 73, 79–80 (S.D.N.Y.1996); *Sweet v. Electronic Data Systems, Inc.,* 1996 WL 204471, at *9 (S.D.N.Y. April 26, 1996). However, these holdings have been called into doubt by the Second Circuit's decision in the *Reeves* case.

In *Reeves,* the district court granted the defendant's motion for summary judgment dismissing the plaintiff's claims under both the ADA and the NYHRL. The Second Circuit affirmed the dismissal of the ADA claim, finding that the plaintiff had failed to make out a prima facie case of discrimination under that statute. However, the circuit court reversed the district court's dismissal of the plaintiff's NYHRL claim. Focusing on the "disjunctive" language in the state statute's definition of "disability" ("or is demonstrable by medically accepted clinical or laboratory diagnostic techniques"), the court found that the NYHRL, as construed by the state's highest court, is broader than the ADA in that it does not require the plaintiff to identify a major life activity that is substantially limited by her impairment. *Reeves v. Johnson Controls, supra,* 140 F.3d at 154–56 (citing *State Division of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985)). Instead, the plaintiff need only show that her impairment "is demonstrable by medically accepted techniques...." *Hazeldine v. Beverage Media, Ltd.,* 954 F.Supp. 697, 706 (S.D.N.Y.1997), *quoted in Reeves, supra,* 140 F.3d at 155.

In this case, the medical records attached to defendant's motion papers show that plaintiff's sinusitis is demonstrable by medically accepted techniques (*see, e.g.,* Item 20, Ex. A). Accordingly, under *Reeves,* even though this evidence is insufficient as a matter of law to show that plaintiff suffers from a disability within the proscriptions of the ADA, it is sufficient to establish a prima facie case under the NYHRL, and to preclude the entry of summary judgment in favor of defendant on this claim.[4]

Accordingly, defendant is not entitled to summary judgment dismissing plaintiff's NYHRL claim.

### 3. FMLA.

■ Defendant also moves for summary judgment dismissing plaintiff's FMLA claim on the ground that plaintiff did not give 30 days' notice of her need for medical leave, as required by the statute. The FMLA provides that an employee is entitled to up to twelve weeks of unpaid leave for a serious health condition that renders the employee unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1)(D). "Serious health condition" is defined in the statute as "an illness, injury, impairment, or physical or mental condition that involves ... inpa-

---

**4.** In *Scott v. Flaghouse, Inc.,* 159 F.3d 1348 (2d Cir.1998) (table, text in Westlaw at 1998 WL 536764), the Second Circuit suggested that, when a plaintiff's ADA claims are dismissed on summary judgment, the court should decline to exercise supplemental jurisdiction over the NYHRL claims. *Id.,* 159 F.3d 1348, 1998 WL 536764, at *3 (citing *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995) (dismissing supplemental state claims after dismissal of federal claims); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")). In this case, because defendants are not entitled to summary judgment dismissing plaintiff's FMLA claim (*see* discussion in the text *infra*), there remains a claim "over which [the court] has original jurisdiction," and there is no basis for declining to exercise supplemental jurisdiction over the NYHRL claim. 28 U.S.C. § 1367(c)(3).

tient care in a hospital, hospice, or residential medical care facility ..." or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A), (B).

The FMLA also provides that, where leave is "foreseeable based on planned medical treatment," the employee must make a reasonable effort to schedule treatment so as not to disrupt the employer's operations and shall give the employer at least 30 days' notice, "except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B); *see also* 29 C.F.R. § 825.302(a) ("If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable."); *Seaman v. CSPH, Inc.,* 179 F.3d 297, 302 (5th Cir.1999); *Slaughter v. American Building Maintenance Co. of New York,* 64 F.Supp.2d 319, 326 (S.D.N.Y.1999). "As soon as practicable" means "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b); *see Bailey v. Amsted Indus., Inc.,* 172 F.3d 1041, 1045 (8th Cir.1999).

■ Courts interpreting the statute's notice requirement have held that an employee requesting FMLA leave need not invoke the specific language of the statute, but must inform the employer of the request for time off for a serious health condition. *See Brohm v. JH Properties, Inc.,* 149 F.3d 517, 523 (6th Cir.1998); *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 762 (5th Cir.1995); *Slaughter v. American Building Maintenance Co. of New York,* 64 F.Supp.2d 319, 326 (S.D.N.Y.1999). "It is notice of the qualifying reason for leave, and not notice of the FMLA basis for that leave, that must be communicated." *Slaughter, supra.* However, sufficient information must be given to the employer to provide reasonable notice that the employee requests

time off for a serious health condition. *See Price v. Marathon Cheese Corp.,* 119 F.3d 330, 335 n. 17 (5th Cir.1997). "Nothing in the [FMLA] ... places a duty on an employer to affirmatively grant leave without such a request or notice by the employee. Rather, to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Properties, supra,* 149 F.3d at 523; *see also Manuel v. Westlake Polymers, supra,* 66 F.3d at 762. Indeed, several circuit courts have granted or upheld summary judgment or judgment as a matter of law dismissing the plaintiff's FMLA claim where the notice supplied by the employee was patently insufficient to inform the employer of the reason for taking leave. *See, e.g., Seaman v. CSPH, supra,* 179 F.3d at 302; *Bailey v. Amsted, supra,* 172 F.3d at 1046; *Satterfield v. Wal–Mart Stores, Inc.,* 135 F.3d 973, 980–81 (5th Cir.), *cert. denied,* 525 U.S. 826, 119 S.Ct. 72, 142 L.Ed.2d 57 (1998); *Gay v. Gilman Paper Co.,* 125 F.3d 1432, 1436 (11th Cir.1997).

In this case, the surgery to alleviate plaintiff's sinusitis was clearly "foreseeable based on planned medical treatment...." 29 U.S.C. § 2612(e)(2). Plaintiff was therefore required by statute to give her employer 30 days' advance notice before the leave was to begin so as not to disrupt the operations of the Uni–Mart store, unless the treatment required leave to begin in less than 30 days, in which case plaintiff was required to give such notice as was practicable under the circumstances. Defendant's argument that the phrase "as soon as is practicable" does not apply to foreseeable medical treatment is not supported by the language of the statute.

Plaintiff informed her supervisor on May 20, 1997, that she was scheduled to undergo surgery on June 10, 1997, and that she would need to take medical leave (*see* Item 20, Ex. E, pp. 52–53). While this was less than 30 days' notice, it was given on the same day that plaintiff returned to work from medical leave, and on the same

day that her doctor scheduled the surgery. This raises a genuine issue of fact as to whether the notice was given "as soon as practicable" under 29 U.S.C. § 2612(e)(2)(B) and 29 C.F.R. § 825.302(b), precluding summary judgment in favor of defendant.

Accordingly, defendant's summary judgment motion should be denied to the extent it seeks dismissal of plaintiff's FMLA claim.

### 4. Damages.

■ Finally, defendant moves for summary judgment on the ground that plaintiff has suffered no actual damages as a result of defendant's alleged ADA, NYHRL and FMLA violations. According to defendant, plaintiff received unemployment benefits during her eight week recovery period, and then accepted employment at Empire Cellular, which offered a lower rate of pay but better working hours.

■ Ordinarily, a plaintiff who establishes a claim of discriminatory discharge is entitled to an award of back pay from the date of the termination until the date of judgment. *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 144–45 (2d Cir. 1993) (Title VII), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Meling v. St. Francis College*, 3 F.Supp.2d 267, 275 (E.D.N.Y.1998) (ADA). The purpose of a back pay award is to make whole the victim of unlawful discrimination, not to punish an employer or provide a windfall to the employee. *Clarke v. Frank*, 960 F.2d 1146, 1151 (2d Cir.1992); *see also Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 412 (S.D.N.Y.1996). The award should compensate the plaintiff for the wages and benefits she lost on account of the unlawful termination of her employment. *Meling v. St. Francis College, supra*, 3 F.Supp.2d at 275.

■ In addition, the rule in the Second Circuit is that the employer's liability for back pay may be reduced by the amount of the plaintiff's interim earnings from other employment. *See Clarke v. Frank, supra* (earnings from work accepted by plaintiff

after discharge subtracted from back pay award); *Taylor v. Polygram Records*, 1999 WL 124456, at *26 (S.D.N.Y. March 8, 1999) (plaintiff's back pay award reduced by amount of earnings from temporary work during period before she rejected offer of reinstatement). The Second Circuit has refused to require the automatic deduction of unemployment benefits from a back pay award. *Dailey v. Societe Generale*, 108 F.3d 451, 460–61 (2d Cir.1997). Instead, it has made clear that whether or not an award should be offset by unemployment compensation is a discretionary determination to be made by the court. *Id.*

In any event, the determination whether to reduce a back pay award is obviously premature where the case "has not yet been tried and no award has been made...." *Taylor v. Polygram Records, supra; see also Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 696 (2d Cir. 1998) (question whether an employee has made reasonably diligent efforts to mitigate damages is ordinarily one of fact for the jury). Simply put, the record in this case contains insufficient information for the court to determine as a matter of law that plaintiff has suffered no actual damages as a result of defendant's conduct.

Defendant also cites *Dodgens v. Kent Manufacturing Co.*, 955 F.Supp. 560 (D.S.C.1997), as an example of a case where summary judgment was granted in favor of the employer based on the plaintiff's failure to show economic loss resulting from an FMLA violation. In *Dodgens*, the court found that the employer had "clearly violated the FMLA" by failing to explain available FMLA benefits and leave rights to the plaintiff, either in its employee handbook or at the time the plaintiff requested leave. *Id.* at 564–65. Nonetheless, the court granted the defendant's motion for summary judgment, finding that it "would be elevating form over substance to permit this claim to go forward in light of the fact that [the plaintiff] received all of the leave benefits that he was guaranteed

pursuant to the FMLA" (*i.e.,* twelve weeks of qualified unpaid leave, maintaining employment-related benefits while on leave, and reinstatement to previous position or an equivalent position at the end of the leave). *Id.* at 565. In this case, to the contrary, there is no showing that plaintiff received *any* of the leave benefits guaranteed by the statute.

Accordingly, I find that defendant is not entitled to summary judgment on the ground that plaintiff has failed to show that she suffered actual damages.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's summary judgment motion (**Item 19**) be granted to the extent that it seeks dismissal of plaintiff's claim under the ADA, and denied in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

SO ORDERED.