IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-21132

Summary Calendar
_____


RONALD F. WILLIAMS

                              Plaintiff – Appellant

        v.

TACO BELL CORPORATION

                              Defendant – Appellee


_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-00-3141
_____
August 2, 2002

Before KING, Chief Judge, and HIGGINBOTHAM and BENAVIDES, Circuit
Judges.

PER CURIAM:*

    In federal district court, Plaintiff-Appellant Ronald F.

Williams asserted racial discrimination and retaliation claims

pursuant to Title VII of the Civil Rights Act of 1964 against his

employer, Defendant-Appellee Taco Bell Corporation.  42 U.S.C. §

_____

    * Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

2000e et seq. (1994). Williams appeals from the district court's grant of summary judgment in favor of Taco Bell Corporation. For the following reasons, we AFFIRM the judgment of the district court.

## I.  Factual and Procedural History

Defendant-Appellee Taco Bell Corporation ("Taco Bell") hired Plaintiff-Appellant Ronald F. Williams, an African-American, on February 3, 1999. In September 1999, after Williams completed manager training at two other Taco Bell locations, Taco Bell transferred Williams to manage its "Store #16172." As the manager of Store #16172, Williams was supervised by Mark Bridges, a restaurant support manager charged with supervising several Taco Bell locations. Bridges was the primary contact for the managers of stores under his supervision, and he was responsible for evaluating the performance of the supervised restaurants and their personnel.

Store #16172 experienced production problems and was audited by Taco Bell on September 3, 1999, just prior to Williams's assignment to the management position there. In an effort to increase production at Store #16172, supervisor Bridges asked Williams to create an "action" plan for the store by October 24, 1999. As requested, Williams prepared the plan and submitted it to Bridges.

During Williams's tenure as the manager of Store #16172, the store's employees were primarily Hispanic and African-American. Williams asserts that, during Bridges's multiple visits to Store #16172, Bridges occasionally made racially discriminatory statements to Williams and his staff. Specifically, Williams asserts that Bridges asked the employees why they drove such nice cars when they worked at a low-performing Taco Bell restaurant. Williams complained to Bridges about his disparaging comments, and when Bridges "laughed it off," Williams complained to Bridges's supervisor, Chad Montsinger, in October of 1999.

After the meeting with Montsinger, Williams asserts that Bridges told Williams that Williams should transfer to a Taco Bell location in the "ghetto" so that another white manager who had been "in the ghetto too long" could transfer to Store #16172. Williams declined to transfer to another Taco Bell location. Williams further asserts that, after Store #16172 was robbed, Bridges warned Williams not to arrive at the store driving a new car. Additionally, according to Williams, Bridges encouraged Williams to hire more white employees because Bridges was unhappy with the fact that ninety percent of the staff at Store #16172 was Hispanic.

Because Store #16172 continued to have production problems under Williams's management, Bridges placed Williams on a "success" plan in December of 1999. The plan outlined specific goals for Williams to meet in order to improve the store's

3

performance. Taco Bell asserts that Bridges warned Williams that Williams would be terminated if he did not meet the goals outlined in this success plan. Store #16172 was re-audited on January 26, 2000 and received an unacceptable rating. On January 28, 2000, Williams called Taco Bell's Business Abuse Hotline and reported alleged illegal practices by Bridges. On February 3, 2000, Taco Bell terminated Williams. Williams's position at Store #16172 was filled by a white manager. According to Taco Bell, the new manager resolved the store's performance problems and passed an audit conducted within forty-five days of his arrival.

On February 23, 2000, Williams filed a formal charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Taco Bell. Williams received a letter from the EEOC, dated June 14, 2000, informing him of his right to sue Taco Bell. Williams filed suit against Taco Bell in federal district court on September 8, 2000. In the district court, Williams asserted claims of discrimination, retaliation, and wrongful discharge under Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e et seq. (1994). Williams further asserted a state law claim for intentional infliction of emotional distress.

4

On August 1, 2001, Taco Bell filed a motion for summary judgment on all of Williams's claims.[1]  The district court granted summary judgment in favor of Taco Bell on all of Williams's claims.  Williams timely appealed the district court's summary judgment with respect to his Title VII discrimination, retaliation, and wrongful discharge claims.[2]

## II.  Standard of Review

We review a grant of summary judgment de novo, applying the same standards as the district court.  Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 167 (5th Cir. 1999).  Summary judgment is proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  We view the evidence in a light most favorable to the non-movant.  Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).  However, if the moving party presents sufficient evidence to support summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for

---

[1]  Williams filed a response to Taco Bell's motion on August 27, 2001.  Although Williams's response was untimely pursuant to a local rule, the district court considered the response "[i]n the interest of justice." For purposes of this appeal, we follow the district court's lead and consider Williams's response to Taco Bell's motion for summary judgment.

[2]  Williams's does not assert on appeal that the district court erred in granting summary judgment in favor of Taco Bell with respect to Williams's claim for intentional infliction of emotional distress.  Therefore, we consider that claim abandoned.

5

trial in order to avoid summary judgment.  Celotex Corp. v.
Catrett, 477 U.S. 317, 324 (1986).

### III.  Analysis

Williams's Title VII discrimination and retaliation claims
are governed by the burden shifting framework established by
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)
(discrimination claim); see also Long v. Eastfield Coll., 88 F.3d
300, 304 (5th Cir. 1996) (retaliation claim).  Under the
McDonnell Douglas framework, the plaintiff bears the initial
burden of establishing a prima facie case of discrimination or
retaliation by a preponderance of the evidence.  St. Mary's Honor
Ctr., 509 U.S. at 506.  If the plaintiff establishes a prima
facie case, an inference of discrimination or retaliation arises,
and the burden shifts to the defendant to articulate a
legitimate, non-discriminatory or non-retaliatory reason for the
employment action.  Id. at 506-07.  At that point, "the McDonnell
Douglas framework – with its presumptions and burdens –
disappear[s], and the sole remaining issue [is] discrimination
vel non."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.
133, 142-43 (2000) (internal citations and quotations omitted).
If the plaintiff shows that the defendant's proffered
justification is mere pretext, that showing, coupled with the
prima facie case, is generally sufficient to survive summary

6

judgment.  Id. at 148-49.  However, an employer is entitled to summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  Id. at 148.

A.  Williams's Racial Discrimination/Wrongful Discharge Claim[3]

To establish a prima facie case of racial discrimination under Title VII, Williams must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside the protected class, or that others similarly situated were treated more favorably.  Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).  The parties do not dispute that Williams satisfies the first, third, and fourth prongs of his prima facie case.  As an African-American, Williams is a member of a protected class, and Taco Bell's termination of Williams's employment constitutes an adverse employment action.  Further, Williams was replaced by someone outside the protected class because Taco Bell filled Williams's position with a white manager.  The district court concluded, however, that Williams failed to establish a prima

---

[3]  Williams does not assert a wrongful discharge claim under state tort law.  Rather, Williams asserts separate claims for racial discrimination and wrongful discharge pursuant to Title VII.  The district court addressed these claims separately. Because the basis of both of these claims is Williams's termination, we analyze these claims together.

7

facie case of discrimination because Williams did not present sufficient evidence that he was qualified to manage Store #16172.

We agree with the district court's conclusion. Taco Bell asserts that Store #16172 suffered from multiple problems during Williams's tenure, including customer complaints, slow service, lack of employee training, excessive number of labor hours used, and poor cash management. It is undisputed that Williams failed to meet the goals outlined in the October action plan and the December success plan, and the store received an unacceptable rating in the January audit. Williams does not controvert Taco Bell's assertion that he was a poor performing manager at Store #16172. Rather, Williams asserts that his "only performance evaluation in a management capacity qualified him for the management position at store 16172." In support of this statement, Williams points to the following excerpt from his own deposition testimony:

> Q: Had you ever met Gregg Flagg prior to working with him at [store] 15214?
> A: No.
> Q: Is that the first time you ever encountered him?
> A: Definitely.
> . . .
> Q: Now, he gave you a performance review, correct?
> A: Yes.
> Q: Okay. And from what I can tell, that is the only performance review of you in a management capacity. Is that a fair statement?
> A: Absolutely.
> Q: But you were not evaluated by anybody but Gregg Flagg?

8

```
A: That's it.
Q: Now at some point you go to another store,
16172; and this is where things start
happening –
```

Contrary to William's assertions, this testimony does not support the claim that Williams was qualified to manage Store #16172. This testimony merely establishes that a performance evaluation occurred while Williams was in management training at another Taco Bell location. Because Williams did not produce the evaluation as part of his evidence opposing summary judgment, the evaluation is not part of the record, and we cannot consider the evaluation's contents or conclusions. Thus, Williams fails to produce any evidence, even if viewed in a light most favorable to Williams, establishing that he was qualified to manage Store #16172.

Williams also argues that, because he was placed in a store with a history of poor performance, the store's performance should not reflect on his qualifications. After Williams's termination, however, the subsequent manager was able to pass an objective audit within forty-five days. This fact suggests that the store's performance is linked to managerial ability rather than performance history. Even viewing the evidence in a light most favorable to Williams, given all of the performance problems at Store #16172 under Williams's management, an oblique mention of an old performance evaluation does not raise a genuine issue of material fact regarding whether Williams was qualified for the

position.  Accordingly, we agree with the district court that Williams fails to establish a prima facie case of discrimination, and the district court properly granted summary judgment in favor of Taco Bell on Williams's discrimination claim.

B.  Williams's Retaliation Claim

To establish a prima facie case of retaliation under Title VII, Williams must show that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there is a causal link between participation in the protected activity and the adverse employment action.  Evans v. City of Houston, 246 F.3d 344, 352 (5th Cir. 2001).  "Protected activity" is defined as opposition to any practice rendered unlawful by Title VII.  See 42 U.S.C. § 2000e-3(a).  A "causal link" exists when "the employer's decision to terminate was based in part on knowledge of the employee's protected activity."  Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001) (internal citations and quotations omitted).  Thus, to demonstrate the causal link required to establish a prima facie case, a plaintiff need not prove that his protected activity was the sole factor motivating the employment decision.  Long, 88 F.3d at 305 n.4.

In this case, the district court concluded that Williams established a prima facie case of retaliation.  We agree. Williams engaged in a protected activity when he complained to Montsinger, Bridges's supervisor, and to Taco Bell's Business

10

Abuse Hotline regarding alleged racially discriminatory statements made by Bridges.  Furthermore, Taco Bell's termination of Williams's employment clearly constitutes an adverse employment action.  Thus, Williams satisfies the first two prongs of his prima facie case of retaliation.

Although it is a closer question, we conclude that Williams also satisfies the third prong of his prima facie case. Williams's complaints to Montsinger and to the hotline occurred not long before Taco Bell terminated Williams.  Moreover, it is undisputed that Taco Bell knew about Williams's complaints. Viewing the evidence in a light most favorable to Williams, Williams establishes a causal link between his complaints of alleged discrimination and Taco Bell's decision to terminate him sufficient for the purposes of his prima facie case.  See Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) (noting that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation") (emphasis omitted); see also Evans, 246 F.3d at 354 (commenting that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes") (internal citations and quotations omitted).

Because Williams establishes a prima facie case, an inference of retaliation arises, and the burden shifts to Taco Bell to articulate a legitimate, non-retaliatory reason for the

11

employment action.  St. Mary's Honor Ctr., 509 U.S. at 506-07.

Taco Bell met its burden by asserting several legitimate, non-

retaliatory reasons for Williams's termination.  Specifically,

Taco Bell offers evidence that, among other problems, Store

#16172 was the lowest performing store out of the seven stores

supervised by Bridges, that Williams did not properly control the

store's inventory within Taco Bell guidelines, that Williams once

falsified records so that the store appeared to be within

inventory guidelines, that Williams did not properly train

employees, that the store struggled with public relations and

customer complaints, that Williams failed to meet goals outlined

in specific plans for improvement, and that the store received an

unacceptable rating in the January audit.

Because Taco Bell has satisfied its burden, Williams must

demonstrate that Taco Bell's proffered justifications for his

termination are a mere pretext for retaliation in order to

maintain his retaliation claim.  Seaman v. CSPH, Inc., 179 F.3d

297, 301 (5th Cir. 1999).  Ultimately, Williams "must show that

'but for' the protected activity, the adverse employment action

would not have occurred."[4]  Id.  Thus, even if retaliation was a

---

[4]  "[T]he ultimate issue in an unlawful retaliation case–whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII–seems identical to the third element of the plaintiff's prima facie case–whether a causal link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly."  Long, 88 F.3d at 305 n.4 (emphasis in original).

12

motivating factor in Williams's termination, "no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." Long, 88 F.3d at 305 n.4. We afford a great deal of deference to employers in their hiring and promotion decisions. Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001).

The district court concluded that Williams fails to produce sufficient evidence that Taco Bell's reasons for terminating him were pretextual. We agree. Beyond mere allegations and his own deposition testimony asserting that he was discriminated against, Williams has produced no evidence of pretext. At this stage of the inquiry, the suspicious timing of Williams's termination is not enough to suggest that Taco Bell's reasons are pretextual. See Swanson, 110 F.3d at 1188 (stating that once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence of actual retaliation). Bridges's alleged comments – regarding the cars driven by the staff, the fact that the staff was majority Hispanic, and Bridges's desire to transfer Williams to the "ghetto" – while inappropriate, do not rise to the level of intentional discrimination against an African-American.

---

The causal link element only requires that the employment decision be "based in part on knowledge of the employee's protected activity," Medina, 238 F.3d at 684 (internal citations and quotations omitted), while the ultimate issue is a 'but-for' inquiry. See Seaman, 179 F.3d at 301.

13

Moreover, Williams produces no evidence to controvert any of Taco Bell's assertions regarding the poor performance of Store #16172 under Williams's management. We conclude that Williams fails to raise a genuine issue of material fact regarding whether the reasons given by Taco Bell for terminating Williams are pretextual. Conclusory assertions and subjective beliefs are insufficient to support a retaliation claim at the summary judgment stage. See Travis v. Bd. of Regents of the Univ. of Tex. Sys., 122 F.3d 259, 266 (5th Cir. 1997) (holding that the plaintiff's assertion of retaliation "is merely her own subjective belief, which is insufficient to create a jury question"). Thus, the district court properly granted summary judgment in favor of Taco Bell on Williams's retaliation claim.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the summary judgment of the district court in favor of Taco Bell.

14