IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2007

Charles R. Fulbruge III
Clerk

No. 06-50741

WANDA KAY WOODSON,

Plaintiff-Appellant,

v.

SCOTT AND WHITE MEMORIAL HOSPITAL,
in its assumed or common name, also known as
Gatesville Scott and White Clinic,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
6:04-CV-403

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Wanda Kay Woodson ("Woodson") appeals the district court's grant of summary judgment to Defendant-Appellee Scott and White Memorial Hospital ("Scott and White"). Finding no reversible error, we affirm.

I.

Woodson worked for Scott and White from 1996 until her termination in 2003. Prior to her termination, Woodson served as a "charge nurse," supervising

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

other nurses and personnel. Woodson's immediate supervisor at this time was Brian Rugh.

On November 11, 2003, Rugh issued Woodson a "final warning." The final warning alleged that Woodson had used the computer of a co-worker without consent, had looked at the co-worker's e-mails, printed at least one e-mail from the co-worker's account, showed the e-mail to two employees, and told those employees that she thought Rugh and the co-worker had an affair. Woodson denies these allegations. Upon receiving the warning, Woodson became very emotional and was given the remainder of the day off. Woodson claims that at that time she suffered severe anxiety and a panic attack, which led her to suffer from depression. Woodson did not return to work, and provided two doctor's notes excusing her absence.

Scott and White claim that after Woodson left work, two employees reported that she continued to gossip. Further, Scott and White performed an audit of Woodson's access to medical records, which showed that Woodson had accessed the medical records of herself and a number of other employees. Such access was in violation of Scott and White's medical records policy. Woodson denies that she continued to gossip. She also claims that she never accessed other employees' medical records and that it was not unusual for other nurses to use Woodson's password to access files without Woodson's permission.

On November 18, 2003, Rugh called Woodson and informed her that she had been terminated. Woodson's termination letter indicated that she was terminated because of unprofessional behavior and violation of the medical records access policy. Woodson claims that she had already requested that Scott and White send Family and Medical Leave Act ("FMLA")[1] paperwork to her doctor, and that on November 17, 2003, Woodson had informed Rugh that she

---

[1] 29 U.S.C. § 2601, et seq. (2000).

2

was under the care of a psychiatrist and could not come into work.  Scott and White claims that it did not receive her application for leave until November 19, 2003, the day after her termination.

Woodson filed suit alleging that Scott and White terminated her in retaliation for applying for FMLA leave; discriminated against her under the Americans with Disability Act; and discriminated against her under the Texas Commission on Human Rights Act.  The district court granted summary judgment to Scott and White on all three claims.  Woodson appeals only the dismissal of her FLMA retaliation claim.

## II.

Woodson alleges that Scott and White retaliated against her by terminating her in response to her request for FMLA leave.  See 29 U.S.C. § 2615(a)(1)-(2).  To establish a prima facie case of retaliation under the FMLA, Woodson must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave.  Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001).  If Woodson succeeds in making a prima facie case, the burden shifts to Scott and White to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action.  Id.  Once Scott and White has done so, Woodson must show by a preponderance of the evidence that Scott and White's reason is a pretext for retaliation.  Id.  Ultimately, Woodson must demonstrate that but for filing for FMLA leave, she would not have been terminated.  Seaman v. CPSH, Inc., 179 F.3d 297, 301 (5th Cir. 1999).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record discloses that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  FED R. CIV.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). It is not disputed that Woodson has satisfied the first two prongs of a prima facie case of retaliation. So, in order to prevail on its motion for summary judgment, Scott and White has the burden of proving that Woodson did not satisfy either prong 3(a) or 3(b) of the Hunt test or that Woodson did not raise an issue of material fact as to whether its alleged reasons for discharging her were a reason for pretext. The district court granted summary judgment for Scott and White on the grounds that Woodson cannot establish a prima facie case of retaliation, and that, even if she could, she cannot prove that the reasons that Scott and White claim as the basis for her dismissal were merely a pretext for retaliation. This court reviews de novo a district court's grant of summary judgment, applying the same legal standards as the district court. Allstate Ins. Co. v. Disability Servs. of the Sw. Inc., 400 F.3d 260, 262-63 (5th Cir. 2005).

The parties dispute whether Woodson has established the third prong of a prima facie case of retaliation. But, even assuming that Woodson has stated a prima facie case, her claim must fail because none of the evidence in the record rebuts Scott and White's legitimate, non-retaliatory reasons for terminating Woodson.

Scott and White demonstrated that Woodson was already at risk for termination due to the final warning she received on November 11, 2003. The final warning was given before Woodson requested that FMLA paperwork be sent to her doctor and before the date that she alleges Rugh was told that she was applying for FMLA leave. Further, Scott and White proffers that Woodson was fired because she accessed another employee's e-mail, acted unprofessionally by gossiping, and violated the medical records access policy. Scott and White has met its burden of producing a legitimate, non-retaliatory reason for Woodson's discharge. See Nasti v. Ceiba Specialty Chems., 492 F.3d 589, 593 (5th Cir. 2007) ("The employer is not required to convince the Court that it was actually

motivated by the [proffered] reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff.").

Accordingly, Woodson must raise a genuine issue of material fact as to whether this explanation is merely pretext, such that a reasonable fact-finder could infer discrimination. Id. at 593-94. A plaintiff can establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). The pretext inquiry focuses on the authenticity of the employer's proffered reasons.

Woodson argues that the close temporal proximity between her request for FMLA leave and her dismissal indicates pretext. Woodson also argues that summary judgment was inappropriate because she disputes the events underlying her termination. However, these arguments do not create an issue of pretext. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation. However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007). Woodson has not done so; Woodson's evidence does not rebut Scott and White's explanation for why Woodson was fired nor does it connect her dismissal to her request for FMLA leave. Although Woodson disputes the truth of the facts underlying her termination, she has not demonstrated that Scott and White knew the allegations were untrue. In a retaliation case, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason" for making an employment decision." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). Further, her termination was based, in part, on a final warning that

she received prior to any request for FMLA leave. Viewing all the evidence in Woodson's favor, the record shows that Scott and White believed that Woodson acted unprofessionally and violated e-mail and medical records policies and that she was terminated for that reason. Based on this record, we find that a reasonable juror could not conclude that Woodson was terminated because of her request for FMLA leave.

III.

For the reasons stated above, we AFFIRM.